UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

JACOB SMITH,
 Plaintiff,

v.

            Case No. 2:20-cv-3755
            JUDGE EDMUND A. SARGUS, JR.
            Magistrate Judge Kimberly A. Jolson

FIRSTENERGY CORP. AND
FIRSTENERGY SERVICE CO.,
 Defendants.

---

BRIAN HUDOCK AND CAMEO
COUNTERTOPS, INC.,
 Plaintiff,

v.

            Case No. 2:20-cv-3954
            JUDGE EDMUND A. SARGUS, JR.
            Magistrate Judge Kimberly A. Jolson

FIRSTENERGY CORP., et al.,
 Defendants,

---

JAMES BULDAS,
 Plaintiff,

v.

            Lead Case No. 2:20-cv-3987
            JUDGE EDMUND A. SARGUS, JR.
            Magistrate Judge Kimberly A. Jolson

FIRSTENERGY CORP., et al.,
 Defendants.

---

**OPINION AND ORDER**

 This matter is before the Court on Plaintiffs' Motion for Class Certification filed in these three consolidated cases. (ECF No. 68 in Case No. 2:20-cv-3987[1]); (ECF No. 71 in Case No.

---

[1] The Court has designated Case No. 2:20-cv-3987 as the lead case in these three consolidated actions. Therefore, unless otherwise noted, all citations are to this lead case's docket.

2:20-cv-3954); and (ECF No. 62 in Case No. 2:20-cv-3755).  For the reasons set forth below, the Court **GRANTS** Plaintiffs' Motion.

## I.

On July 27, 2020, *Jacob Smith v. FirstEnergy Corp. et al.*, 2:20-cv-3755 was filed as a putative class action (the "*Smith Action*").  (ECF No. 1.)  The Complaint alleged that the FirstEnergy Defendants engaged in a bribery scheme resulting in the passage of Ohio House Bill 6 ("H.B. 6"), in violation of the federal Racketeer Influenced Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1961-196, the Ohio Corrupt Practices Act ("OCPA"), and other common and statutory law.  According to the Complaint, HB 6, which went into effect on October 21, 2019, created a monthly surcharge on consumer electric bills to provide subsidies to two of FirstEnergy's failing nuclear power plants.  (*Id.* ¶¶ 1–18, 52.) The *Smith Action* asserted allegations on behalf of "[a]ll persons and entities who have and/or will have to pay a monthly surcharge for electric pursuant to HB 6."  (*Id.* ¶ 54.)

On July 31, 2020, James Buldas initiated *James Buldas v. FirstEnergy Corp. et al.*, 2:20-cv-3755, also a putative class action (the "*Buldas Action*"). (Case No. 2:20-cv-3987, ECF No. 1.) Similar to the *Smith Action*, the *Buldas Action* asserted allegations on behalf of "[a]ll persons and entities resident in the State of Ohio who have and/or will have to pay a monthly surcharge for electric service pursuant to HB 6."  (*Id.* ¶ 55.)

On August 5, 2020, Plaintiffs filed *Brian Hudock and Cameo Countertops, Inc. v. FirstEnergy Corp. et al.*, 2:20-cv-3954, a third putative class action (the "*Hudock Action*"). (Case No. 2:20-cv-3954, ECF No. 1.) Like *Smith* and *Buldas*, the *Hudock Action* asserted allegations on behalf of "[a]]ll persons and entities resident in the State of Ohio who have and/or will have to pay a monthly surcharge for electric service pursuant to H.B. 6."  (*Id.* ¶ 56.)

2

On August 27, 2020, Plaintiffs in the *Smith*, *Buldas*, and *Hudock Actions* filed a joint motion with Defendants to consolidate the three actions (ECF No. 13), which this Court granted (ECF No. 16). On September 8, 2020, Plaintiff Smith filed a motion for appointment of interim co-lead class counsel (ECF No. 14), which this Court granted (ECF No. 63). The Plaintiffs have now filed an unopposed motion for class certification in all three actions.

## II.

A trial court has broad discretion in deciding whether to certify a class, but that discretion must be exercised within the framework of Rule 23 of the Federal Rules of Civil Procedure. *In re Am. Med. Sys., Inc.*, 75 F.3d 1069, 1079 (6th Cir. 1996) (citing *Gulf Oil Co. v. Bernard,* 452 U.S. 89, 100 (1981)). The district court must conduct a "rigorous analysis" into whether the prerequisites of Rule 23 are satisfied before certifying a class. *Gen. Tel. Co. v. Falcon*, 457 U.S. 147, 161 (1982).

The trial court, however, is not permitted to inquire into a case's merits at the class certification stage. *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 177–78 (1974). ("We find nothing in either the language or history of Rule 23 that gives a court any authority to conduct a preliminary inquiry into the merits of a suit in order to determine whether it may be maintained as a class action. Indeed, such a procedure contravenes the Rule."). Thus, "[m]erits questions may be considered to the extent—but only to the extent—that they are relevant to determining whether the Rule 23 prerequisites for class certification are satisfied." *Rikos v. Procter & Gamble Co.*, 799 F.3d 497, 505 (6th Cir. 2015) (quoting *Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*, 568 U.S. 455, 466 (2013)) (internal quotations omitted); *see also In re Whirlpool Corp. Front-Loading Washer Prods. Liability Litig.*, 722 F.3d 838, 851–52 (6th Cir. 2013) ("[D]istrict

courts may not turn the class certification proceedings into a dress rehearsal for the trial on the merits.") (internal quotations omitted).

In addition to showing the factors set forth in Rule 23(a) are met, the plaintiff must satisfy one of the three sub-sections of Rule 23(b). *Powers v. Hamilton County Pub. Defender Comm'n,* 501 F.3d 592, 619 (6th Cir. 2007).

### III.

Plaintiffs seek to represent a Class defined as:

> All persons and entities resident in the state of Ohio who have and/or will have to pay a monthly surcharge for electric service pursuant to HB 6.

House Bill 6 was scheduled to impose the nuclear bailout fee on all ratepayers throughout the State of Ohio. In addition, customers of FirstEnergy's Electric Distribution Utilities ("EDUs") continue to pay a legacy bailout fee for two old coal-powered plants and, until recently, paid tens of millions of dollars of rate stabilization charges, also known as "decoupling." While collection of these fees has been suspended, FirstEnergy allegedly collected fees before such corrective legislation.

Plaintiffs contend that they have met their burden under Rule 23(a) and move for class certification under Rules 23(b)(1)(A), 23(b)(2), and 23(b)(3). This Court agrees.

**A.     Rule 23(a)**

The burden is on the plaintiff to establish a right to class certification. *Falcon*, 457 U.S. at 160; *Alkire v. Irving*, 330 F.3d 802 (6th Cir. 2003). Following the proposal of a properly defined class, which Plaintiffs in this case have done, they must satisfy the prerequisites set forth in Rule 23(a):

> (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the

representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a).

**1. Numerosity**

"[T]he numerosity requirement requires examination of the specific facts of each case and imposes no absolute limitations." *Gen'l Tele. Co.*, 446 U.S. at 330. "[I]mpracticability of joinder must be positively shown, and cannot be speculative." *Golden v. City of Columbus*, 404 F.3d 950, 966 (6th Cir. 2005) (internal quotation marks omitted). According to FirstEnergy, its Ohio EDUs serve over two million customers. https://www.firstenergycorp.com/our_electric_companies_home.html. This estimate satisfies the numerosity requirement of Rule 23(a). See *In re Cty. of Cheboygan*, 2021 U.S. App. LEXIS 2787, *4 (6th Cir., Feb. 1, 2021) (no abuse of discretion occurred when the trial court certified a class of 400 potential members); *Williams v. Duke Energy*, Case No. 1:08-cv-46, 2014 U.S. Dist. LEXIS 201655 (S.D. Ohio Mar. 13, 2014).

**2. Commonality**

"Rule 23(a)(2) requires that for certification there must be 'questions of law or fact common to the class.'" *In re Am. Med. Sys., Inc.*, 75 F.3d 1069, 1080 (6th Cir. 1996). The claims must depend on a common contention "of such a nature that it is capable of class-wide resolution - which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Dukes*, 564 U.S. at 338. The inquiry focuses on whether a class action will generate common answers that are likely to drive resolution of the lawsuit, not on whether common questions are raised. *Id.*

Plaintiffs maintain that there are numerous common factual and legal issues in this case, which include the following:

>   (a) whether Defendants bribed the members of the Householder Enterprise to obtain nuclear power plant legislation, known as H.B. 6; (b) whether the misconduct alleged in the [Class Action Complaint] violated RICO, and OCPA; (c) whether Class members are entitled to recover compensatory damages, punitive damages, treble damages and/or statutory damages; and (d) whether Defendants' misconduct entitles members of the Class to recover attorneys' fees and litigation expenses. Additional Class-wide questions include whether Plaintiffs may recover damages for Defendants' uniform misconduct under theories of civil conspiracy, injury by criminal acts, unjust enrichment, and negligence or gross negligence.

(Mot. for Class Cert. at 3, ECF No. 68-8.)

The Court finds that the commonality requirement is met here. The claims asserted by Plaintiffs on behalf of themselves and the Class depend on a common contention of such a nature that it is capable of class-wide resolution, and the inquiries necessary will generate common answers that are likely to drive resolution of the lawsuit.

### 3. Typicality

Rule 23(a) further requires that Plaintiffs demonstrate that the claims of the named representatives are typical of claims of Class. Fed. R. Civ. P. 23(a)(3). A "plaintiff's claim is typical if it arises from the same event or practice or course of conduct that gives rise to the claims of other class members, and if his or her claims are based on the same legal theory." *Powers*, 501 F.3d at 618 (quoting *Am. Med. Sys.*, 75 F.3d at 1082) (internal quotation marks omitted)). This requirement ensures that this Court may properly attribute a collective nature to the challenged conduct. *Id.* "The premise of the typicality requirement is simply stated: as goes the claim of the named plaintiff, so go the claims of the class." *Sprague*, 133 F.3d at 399. The representative's interests must be aligned with those of the representative group such that the representative's pursuit of its own claims advances the interests of the class. *Id.*

This Court agrees with Plaintiffs that there is no material variation in the fact patterns amongst the claims of the Class. Plaintiffs and the Class are pursuing the same legal theory..

6

Each Class member's claim, just like Plaintiffs' claims, is identical inasmuch as the question to be decided is whether fees mandated by H.B. 6 were in violation of state and federal laws. This common course of conduct can be reviewed by this Court under a common legal theory and will allow the adjudication of this case on behalf of the entire Class. Because the proposed Class representatives seek to prosecute the same claim for themselves and for the absent Class members, under identical legal theories, typicality is established.

### 4. Fairly and Adequate Representation

Rule 23(a)(4) requires that the class representative, "fairly and adequately protect the interest of the class." Fed. R. Civ. P. 23(a)(4). Adequacy of representation is divided into the adequacy of the Class representative and the adequacy of Class counsel.

#### a. Class Representatives

"The adequacy inquiry under Rule 23(a)(4) serves to uncover conflicts of interest between named parties and the class they seek to represent. A class representative must be part of the class and possess the same interest and suffer the same injury as the class members." *Young*, 693 F.3d at 543; *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 625-26 (1997). A class representative must be part

Named Plaintiffs possess the same interest and allegedly suffered the same injury as the class members. Additionally, they have submitted evidence to attest to their willingness to appear for depositions and to answer discovery requests; they have assisted counsel in the prosecution of this action and have subserved their own interests for those of the Class. (Named Pl Affid's, ECF Nos. 68-1, 68-2, 68-3.) The Named Plaintiffs aver that they are aware of their fiduciary obligation to the absent Class members that they seek to represent and they are

committed to continuing their vigorous prosecution of the Class' claims. (*Id*.) Thus, the Court finds that the Named Plaintiffs will fairly and adequately represent the Class.

        **b.**      **Class Counsel**

In assessing the adequacy of representation, this Court must also consider whether the Class representative will vigorously prosecute the Class members' interest through qualified counsel. *In re Cincinnati Radiation Litig.*, 187 F.R.D. 549, 553 (S.D. Ohio 1999). Plaintiffs' counsel Dennis Murray and Marvin Miller previously presented their credentials and those in their firms to lead and represent the Class. After review, this Court approved interim co-lead counsel in this matter. (ECF No. 57.) For the same reasons stated in that decision, the Court concludes that the Class is represented by qualified counsel. Plaintiffs' counsel has dedicated and, the Court anticipates will continue to dedicate, high levels of legal skill and resources to the vigorous prosecution of this class action litigation.

**B.**      **Rule 23(b)(3)**

Plaintiffs seek to certify this Class as an opt-out class action under Rule 23(b)(3). Class certification pursuant to Rule 23(b)(3) is appropriate whenever the Court finds that (1) common questions of fact or law predominate over individual questions ("predominance"), and (2) class treatment of plaintiff's claims is superior to other available methods for the fair and efficient adjudication of the controversy ("superiority"). Fed. R. Civ. P. 23(b)(3).

        **1.**      **Predominance**

"The Rule 23(b)(3) predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Beattie*, 511 F.3d at 564 (quoting *Amchem*, 521 U.S. at 623). "To meet the predominance requirement, a plaintiff must establish that issues subject to generalized proof and applicable to the class as a whole predominate over those issues

that are subject to only individualized proof." *Young*, 693 F.3d at 544 (quoting *Randleman v. Fid. Nat'l Title Ins. Co.*, 646 F.3d 347, 352-53 (6th Cir. 2011)).  Common issues predominate when liability can be determined on a class-wide basis.  *Beattie*, 511 F.3d at 564.  "Considering whether 'questions of law or fact common to class members predominate' begins, of course, with the elements of the underlying cause of action."  *Erica P. John Fund, Inc. v. Halliburton Co.*, 563 U.S. 804 (2011).  Answering the central questions of whether Defendants' conduct warrants an award of damages pursuant to RICO, OCPA, and/or statutory and common law claims with regard to the entire Class is preferable to separate litigation of individual claims.  These questions predominate over possible individual questions since the alleged wrongful conduct was the same with respect to all Class members and can be determined on a class-wide basis.  No individual issues are likely to be raised to defeat predominance.

### 2. Superiority

Class certification offers judicial efficiencies permitting common claims and issues to be tried only once, with binding effect on all parties.  It also avoids the possibility of inconsistent adjudications and facilitates settlement by permitting agreements binding all potential claimants.  The individual damages each Class member may be determined to have suffered has as a result of H.B. 6 fees is readily determinable.  Rule 23(b)(3) lists the following non-exclusive factors as to the superiority requirement:

> (A) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; (D) the difficulties likely to be encountered in the management of a class action.

Fed. R. Civ. P. 23(b)(3).  *See also Amchem*, 521 U.S. at 615-16.

This Court agrees with Plaintiffs that all of these factors, and any other relevant ones, weigh in favor of a finding that class treatment of Plaintiffs' claims is superior to other available methods for the fair and efficient adjudication of the controversy.

The first factor addresses whether the interest of Class members in conducting separate lawsuits is so strong as to require denial of Class certification. The record before the Court shows that no other cases filed prior to the current litigation contending that the Defendants' conduct warrants damages equal the charges mandated by H.B. 6. While litigation was commenced in the Cuyahoga County Court of Common Pleas on August 4, 2020, in *Emmons v. FirstEnergy Corp., et al.*. Case No. CV-20-935557, answers by Defendants in that litigation were filed on June 1, 2021, and no evidence of discovery or class motion practice yet appears on the docket.

The second factor requires consideration of the extent and nature of any existing litigation as to the controversy already commenced by or against members of the Class. This factor suggests the superiority of maintaining this suit as a class action regarding the fees imposed by H.B. 6.

The third superiority factor is the desirability of conducting the litigation in a particular forum and the fourth and final Rule 23(b)(3) factor is "the difficulties likely to be encountered in the management of a class action." *Amchem*, 521 U.S. at 616. The forum here is convenient and the management of this case as a class action presents no unusual difficulties.

The Court finds that the certification of this Class is a superior method for the fair and efficient adjudication of this controversy. All of the Class members' alleged damages were caused by a single course of conduct: the Defendants' conduct that is allegedly in violation of RICO, OCPA, and/or Ohio statutory and/or common law.

## C. Rule 23(b)(1) and 23(b)(2) Injunctive Relief

"Certification under Rule 23(b)(2) is appropriate only if 'the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole.' Fed. R. Civ. P. 23(b)(2)." *Williams,* 2014 U.S. Dist. LEXIS 201655, at *39-40. "If the Rule 23(a) prerequisites had been met and injunctive or declaratory relief has been requested, the action usually should be allowed to proceed under subdivision (b)(2)." *Id.*; 7A Wright, Miller & Kane, FEDERAL PRACTICE AND PROCEDURE: CIVIL 2D § 1775, at 462 (2 ed.1986).

That is the situation in the case sub judice. That is, Plaintiffs seek injunctive relief as to the entire proposed class, and Rule 23(a)'s prerequisites are met. Thus, certification under 23(b)(2) is appropriate.

A Rule 23(b)(1)(A) class action is utilized when separate actions would create incompatible standards of conduct for the party opposing the class, or when the interests of the members not parties to the litigation would be impeded by individual adjudications. *See, e.g., In re Bendectin Products Liability Litigation*, 749 F.2d 300, 305 (6th Cir. 1994) (if inconsistent declarations of liability could result from separate actions, certification of a class may be appropriate). Here, Plaintiffs contend, and the Court agrees, that separate prosecution of the class's injunctive and declaratory relief claims would create the risk of inconsistent adjudications that could lead to incompatible standards of conduct for Defendants. Thus, certification under Rule 23(b)(1)(A) is proper as well.

## IV.

Based on the foregoing, the Court **GRANTS** Plaintiffs' Motion for Class Certification (ECF No. 68 in Case No. 2:20-cv-3987); (ECF No. 71 in Case No. 2:20-cv-3954); (ECF No. 62 in Case No. 2:20-cv-3755).  This Case remains open.

**IT IS SO ORDERED.**

**11/9/2021**                                                 **s/Edmund A. Sargus, Jr.**
**DATE**                                                       **EDMUND A. SARGUS, JR.**
                                                              **UNITED STATES DISTRICT JUDGE**